**Application of William V. EVANS, for Writ of Habeas Corpus.**

**No. 9625.**

Missouri Court of Appeals, Springfield District.

April 15, 1974.

Paul McGhee, Dexter, for petitioner.

David Robards, Asst. Atty. Gen., Jefferson City, for respondent.

### ORIGINAL PROCEEDING IN HABEAS CORPUS

BILLINGS, Judge.

In this habeas corpus proceeding petitioner William V. Evans has challenged the legality of an extradition warrant issued by the Governor of the State of Missouri at the request of Georgia authorities and directed to the Sheriff of Stoddard County, respondent. Our writ issued pursuant to § 548.101, RSMo 1969, V.A.M.S., and we conducted a hearing on the issues joined. We now conclude petitioner's liberty is illegally restrained under the Missouri rendition warrant and he is ordered discharged.

The petitioner charges that the affidavit which gave rise to the issuance of a Georgia criminal warrant did not allege an offense under the laws of that state; that the requisition by the Georgia authorities was defective; that petitioner is not a fugitive from justice from Georgia; and, that the extradition proceedings were instituted in bad faith for the purpose of collecting a private indebtedness. On the other hand, respondent contends that the demand for extradition and supporting documents authorized the Governor of Missouri to order petitioner's extradition to the State of Georgia. Respondent further maintains that in this habeas corpus pro-

ceeding we are not at liberty to make inquiry into the motives behind the Georgia charge.

 The scope of our review of extradition proceedings in habeas corpus is narrowly limited to the question of whether the Governor of Missouri exceeded his authority in honoring Georgia's requisition and issuing the rendition warrant. State ex rel. Anderson v. Weinstein, 359 S.W.2d 355 (Mo.App.1962). We are expressly prohibited by § 548.201, RSMo 1969, V.A.M.S., from inquiring into the guilt or innocence of the petitioner as to the alleged crime and cannot inquire into the motives underlying the institution of the Georgia charge. State ex rel. Anderson v. Weinstein, supra. The conclusions of the Governor of Missouri, as expressed in the extradition warrant, constitute prima facie evidence of such findings. Hagel v. Hendrix, 302 S.W.2d 323 (Mo.App.1957). Nevertheless, it is within our prerogative in habeas corpus proceedings to review an arrest pursuant to the issuance of the Governor's rendition warrant to determine whether the Governor exceeded his authority. Hagel v. Hendrix, supra. Thus, in the instant case, we are authorized to inquire into the sufficiency of the affidavit giving rise to the criminal charge of the demanding state [Hayes v. O'Connell, 263 S.W.2d 66 (Mo.App.1953)] and can determine if the petitioner is a fugitive from justice [Ex Parte Arrington, 270 S.W.2d 39 (Mo. banc 1954)].

Insofar as applicable to the issues before us, § 548.031, RSMo 1969, V.A.M.S., provides: "No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging . . . that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon

. . . . The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state . . . ."

Our hearing established the following sequence of events which bear on petitioner's claims that the affidavit charging a criminal offense is insufficient, and, that he is not a fugitive from justice from Georgia because any alleged offense occurred in Missouri, rather than in the State of Georgia.

Petitioner operated a carpet store in Dexter, Missouri. On November 28, 1972, he went to the Moonglow Carpet Mills, Inc., of Dalton, Georgia, and purchased carpet in the amount of $5,208.34. Petitioner gave Moonglow his post-dated check, drawn on a Dexter bank, for the amount of purchase. According to petitioner the check was dated December 28, 1972, but after it was delivered to Moonglow the date was altered and it was deposited by Moonglow for collection. Between November 28 and December 19, 1972, the check arrived at petitioner's bank and he stopped payment on it.

On December 19, 1972, Moonglow caused a warrant to be issued by a justice of the peace, charging petitioner with having issued an insufficient funds check in the sum of $5,208.38. This warrant was sent to respondent accompanied by a notation of the Georgia sheriff "Subject may settle, if arrested, for $5,230.00 plus your cost. Will attempt to extradite." A series of correspondence ensued between Moonglow, its attorneys, petitioner, his attorney, and some payments on account were made or tendered by petitioner to Moonglow.

On May 16, 1973, Moonglow caused an affidavit to be made, before the same justice of the peace that issued the December 19th warrant, charging petitioner with "theft by conversion" in that "he lawfully obtained property of another under a legal obligation to make a specified disposition of such property, to-wit: the said William

V. Evans did buy carpet in the amount of $5,208.34 from Moonglow Carpet Mill with a check and then stopped payment on the check and kept the carpet. Violation of Georgia Code Section 26–1808." The affidavit was shown signed by Jerry J. Gillean [President of Moonglow] but on the reverse side of the combination affidavit-warrant the "Prosecutor" is shown to be "H. L: Wingate, Jr., Agent for Jerry Gillean, Moonglow Carpet." The affidavit recites it was made on "knowledge and belief".

Thereafter, on June 12, 1973, the District Attorney of Conasauga Judicial Circuit made application to the Governor of the State of Georgia for the extradition of petitioner. The application stated petitioner was present in the State of Georgia at the time of the commission of the alleged crime and was a fugitive from justice, having fled to Stoddard County, Missouri. It was alleged that petitioner had committed the criminal offense of theft by conversion in that petitioner "did unlawfully obtain property of another under a legal obligation to make a specified disposition of such property, to-wit: In that the said WILLIAM V. EVANS did buy carpet in the amount of $5,208.34 from Moonglow Carpet Mill with a check and then stopped payment on the check, keeping the merchandise, in violation of Georgia Code Section 26–1808." The application further affirmatively alleged that it was "not made for the purpose of enforcing the collection of a debt, or for any private purpose whatever . . . ." The application was sworn to by the District Attorney on his information and belief.

Based upon the foregoing application and accompanying documents, the Governor of the State of Georgia did on June 18, 1973, make demand of the Governor of Missouri that petitioner he extradited to Georgia, as a fugitive from justice, for the crime of theft by conversion. Acting on the demand and the authenticated copies of the affidavit and warrant issued thereupon, the Governor of Missouri issued his rendi-

tion warrant on July 16, 1973. Petitioner was taken into custody by respondent by virtue of this warrant and this habeas corpus proceeding followed.

■ Petitioner urges that the Georgia documents were insufficient for the Governor of Missouri to order extradition because the demand was not accompanied by an information supported by affidavit made before a magistrate as specified in § 548.031, supra. In Ex Parte Arrington, supra, it was pointed out that the Missouri statute requires more than the Federal Act governing extradition [18 U.S.C.A. § 3182] and thus conflicts with federal law. § 548.021, RSMo 1969, V.A.M.S., expressly recognizes the supremacy of the federal law in the area of extradition and Hayes v. O'Connell, 263 S.W.2d 66 (Mo.App. 1953), held that a copy of the affidavit alone complied with the federal statute. Petitioner's point is without merit.

■ However, we believe petitioner's claim that the affidavit is insufficient, in that it does not substantially charge him with having committed the crime of theft by conversion, is well taken. The applicable portion of the Georgia statute relied upon by respondent is as follows:

"26–1808, Theft by conversion—

(a) A person commits theft by conversion when, having lawfully obtained funds or other property of another under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of such agreement or legal obligation."

■■ We are aware that in construing the sufficiency of the instant affidavit to state an offense we are not to indulge in the niceties and technicalities of pleading. Lombardo v. Tozer, 264 S.W.2d 376 (Mo. App.1954), and cases cited therein. The affidavit clearly does not allege any *agreement* or other *known legal obligation* to

make a *specified disposition* of the carpeting. "Where the proceeding is based on an affidavit, the affidavit must contain *facts* from which the governor of the asylum state may determine that there is probable cause to believe that the person demanded committed *the crime* with which he is charged. . . ." 35 C.J.S. Extradition § 14(7) p. 422. (our emphasis)

In our opinion the thrust of the charge is that petitioner purchased carpeting from Moonglow with a check upon which he subsequently stopped payment. The only cited Georgia decision construing this statute is Smith v. State, 229 Ga. 727, 194 S. E.2d 82 (1972), and as conceded by the parties is not in point. We hold that the allegations of the affidavit made on behalf of Moonglow do not substantially charge petitioner with a theft by conversion as that crime is defined in the Georgia statute.

We need not consider petitioner's further contention that the affidavit, made by a private individual, was fatally defective because made on "knowledge and belief" rather than an unequivocal statement under oath that the facts stated therein are true. See 35 C.J.S. Extradition § 14(8); 31 Am.Jur.2d, Extradition § 38; Annot., 81 A.L.R. 552 (1932); Annot., 40 A.L.R.2d 1152 (1955). Neither do we deem it necessary to consider petitioner's point that the act of stopping payment on the check to Moonglow occurred in Missouri and that if such act was a violation of the law the criminal act was committed in this state, rather than Georgia—and thus he would not be subject to extradition for prosecution in Georgia for an offense committed in Missouri and, is not a fugitive from justice from the State of Georgia.

Respondent has stressed that a principal reason for us to hold that a violation of the Georgia law was stated in the affidavit and that the alleged crime was committed in Georgia is "[T]he additional burden which would be placed on the Governor of this state should it be held otherwise.

Such a burden . . . would impair the smooth functioning of the extradition process as contemplated by the Framers of the Constitution."

We would remind respondent that § 548.-041, RSMo 1969, V.A.M.S., authorizes the Governor of Missouri, when an extradition demand is made upon him, to call upon the attorney general or any prosecuting officer in this state ". . . [T]o investigate or assist in investigating the demand, and to report to him the situation and circumstances of the person so demanded, and whether he ought to be surrendered." Petitioner's attorney advised us that although he requested a hearing before the Governor's warrant was issued, the warrant was issued without a hearing. Lastly, when we sit in habeas corpus to test the legality of a petitioner's restraint of liberty arising from the issuance of an extradition warrant one's burden of office, be it executive or judicial, is of no weight in the scales of Justice.

Petitioner is ordered discharged.

HOGAN, C. J., not sitting. STONE and TITUS, JJ., concur.